BERTHA JOHNSON and ROSE ANDERMAN, Doing Business as B. JOHNSON & COMPANY, Appellants, v. THE RELIANCE INSURANCE COMPANY OF PHILADELPHIA, PENNSYLVANIA, Respondent.

Kansas City Court of Appeals, July 6, 1914.

1. FIRE INSURANCE: Policy Obtained by Fraud. Plaintiffs, through their father as agent, started a small grocery with the father in control as apparent owner. He had formerly held policies of insurance with defendant, but owing to his many fires and bad insurance record, the company would no longer insure him. He obtained the policy in suit by fraudulently misrepresenting himself to be B. Johnson. And defendant issued the policy to B. Johnson & Co. thinking he was B. Johnson and was the insured, and relying on his representations in that regard. The policy being obtained by fraud perpetrated by plaintiffs' agent to obtain the same, it is void and no recovery thereon can be had by plaintiffs.

2. ———: ———: Evidence. The defense being fraud in the inception of the insurance contract, and not fraud perpetrated after that contract came into existence, evidence of the past insurance record of the agent is admissible on the question of whether or not he committed the fraud alleged in securing the contract. One of the issues being that he fraudulently misrepresented his identity, his past record furnished a motive for his concealing his true name.

3. ———: ———: ———. Where no attempt was made to controvert or cast doubt upon the statement of one of plaintiffs that she put her money into the store, it was immaterial where the money came from, and therefore it was not error for the court to refuse to allow such plaintiff to corroborate her own testimony by showing in detail where she obtained the money to put into the enterprise.

4. ———: ———: ———. While evidence as to the value and quality of a stock is not admissible under a statutory valued policy to reduce the amount recoverable except by way of showing depreciation, decay or salvage since the issuance of the policy, yet as the jury found that the policy was void from its inception and therefore plaintiffs could not recover anything, the admission of such evidence did not constitute reversible error. The evidence of fraud in the inception of the contract

was so overwhelming, and the evidence as to size and quality of the stock so slight and colorless in comparison, that it cannot be said to have prejudiced the jury and produced a different verdict than would have been returned otherwise.

Appeal·from Jackson Circuit Court.—*Hon. C. A. Lawler,* Special Judge.

AFFIRMED.

*John T. Wayland* and *Mord M. Bogie* for appellants.

*Bruce Barnett* for respondent.

TRIMBLE, J.—In this suit on a fire insurance policy to recover the loss of a small grocery stock destroyed by fire, the jury found for the insurance company. Such being the verdict, we accept and state the facts from that standpoint although many of them were not agreed to but were contested at the trial.

Plaintiffs, Bertha Johnson and Rose Anderman, daughters of one Leo Anderman, started a small grocery store at 8229 Independence road, Kansas City. The father was in full charge and control of same as apparent owner. He rented the building for the store and passed himself off to the owner of the building and possibly others in the neighborhood as ''B. Johnson.'' Introducing himself by that name to defendant's insurance agent at Independence he obtained the issuance of the policy sued on to ''B. Johnson & Co.,'' the defendant thinking that it was issuing it to him and that he was B. Johnson, the insured. Eight days after the issuance of the policy the property burned. After the fire, defendant discovered that Anderman was not B. Johnson but was Leo Anderman. who had held former policies in the company and who had had at least eight and possibly more different successive fires in property of which he was in possession and control either as owner or as agent for his wife.

The defendant, therefore, in its answer denied under oath the issuance of the policy to plaintiffs, and set up that the policy was issued by defendant to Leo Anderman under the name of B. Johnson & Co., and further set up that the defendant was induced to so issue the policy by the fraudulent misrepresentations of Anderman as to his identity; that defendant and its agent were ignorant of the fact that Anderman was not B. Johnson, and that his fraudulent misrepresentation as to his name and identity was material because, owing to Leo Anderman's bad record for having so many fire losses, the policy would not have been issued if defendant had known who Anderman really was or that he would have anything to do with the property insured. The policy provided that it should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated.

There was ample evidence from which the jury could find that Leo Anderman fraudulently represented himself to be B. Johnson, owner and in charge of the property and the one to whom the insurance was issued. He applied for it in person and gave his name as B. Johnson. Defendant and its agent believed he was B. Johnson and knew nothing to the contrary and relied upon that representation. Anderman not only passed himself off to defendant as B. Johnson but to others as well and there was nothing to put defendant upon inquiry or give it notice that he was not the man he claimed to be. The evidence also showed that Anderman had had the fires charged by defendant and that on account of this bad reputation for fires, defendant would not have issued the policy had it known that the man to whom it was issued and who would have charge of the property was Leo Anderman.

Error is claimed because the trial court would not allow Bertha Johnson to corroborate her testimony that she was one of the owners of the stock by detailing the sources from whence she derived the money, $550, she put into it. No contest was made by defendant over whether she put her money into the venture. No evidence was offered or questions asked of her, or of any one else, intimating that she did not put her own money into it. In the absence of any such effort, it became wholly immaterial how she got the money. If after testifying that she put her money in, an attempt had been made to throw doubt upon that fact, then evidence giving a reasonable explanation of her monetary resources would have been proper.

With reference to the complaint that the trial court erroneously permitted witnesses who knew very little about groceries to testify as to the size and value of the stock, there is this to be said: The objection is not based on the ground that the witnesses were not qualified to testify on such subjects, but on the ground that under section 7030, Revised Statutes 1909 the policy was a valued policy and fixed the value of the stock as of the day it was delivered, and that, therefore, no evidence on that subject was admissible except to show depreciation, decay or salvage. The evidence, if offered for the purpose of reducing the amount of insurance recoverable, was inadmissible. If the jury had found for plaintiff, but for a reduced amount or for an inadequate sum, plaintiff might well complain. But the charge made by defendant was that the policy was fraudulently obtained, that it had no legal existence because of that fact, and the jury has found defendant's claim to be true. Plaintiffs were, therefore, not entitled to anything. The admission of the evidence was not reversible error since it did not reduce a verdict or lessen the amount of recovery. We have carefully read the record, and the evidence from which the jury could otherwise find that the policy was ob-

tained by fraud is so strong and overwhelming, and the evidence as to the size and value of the stock, complaint of which is now under consideration, is so slight and colorless in comparison, as to convince us that it did not prejudice the jury even if that were the objection lodged against it. Without passing on the question whether the evidence was admissible on the question of fraud in the very procurement of the policy, or deciding whether the proceeding referred to in section 7030 has reference only to those in which a valid contract of insurance exists and not to one in which the contract itself is attacked, it may be said that the evidence, even if inadmissible, had no effect upon the result. The case ought not to be reversed on that account. [Sec. 2082, R. S. Mo. 1909.]

Defendant's instruction No. 4 was not complained of in the motion for new trial, and if not, then it is not before us. But on the theory that the apparent omission may be a mere typographical error, it is well to state that the instruction is not erroneous since it does not refer to values but to the extent of the loss whether total or partial. Plaintiffs still had the burden of proof even if no evidence but theirs was offered.

It is urged that the evidence of the many fires occurring in the business career and experience of Leo Anderman was inadmissible and highly prejudicial. The only evidence brought out on this subject was in the cross-examination of Anderman himself. It must be borne in mind that the fraud charged in this case was in the very procurement of the policy, in Anderman's passing himself off as B. Johnson well knowing that if defendant knew his name was not Johnson but Anderman the policy would not be issued. Neither did defendant charge that the property had been wilfully and intentionally burned. The charge was that the policy was void—i. e. non existent as a valid contract—because it was fraudulently obtained. One of the issues under this charge was, did Anderman fraud-

ulently misrepresent his identity? The evidence as to his many fires and bad insurance record would be admissible as showing that he had a motive for so doing. A motive and reason for his doing a thing is admissible as tending to show that he did it. It also would show wherein the misrepresentation was material and would, therefore, bear upon the allegation that defendant would not have issued the policy to him had his true name been known. Fraud being charged the evidence may properly take a wide range, especially in the cross-examination of the alleged perpetrator of the fraud. [40 Cyc. 2498; 3 Ency. of Ev. 840; Hoxie v. Home Ins. Co., 32 Conn. 21; Kolbe v. Boyle, 108 N. W. 847.] If the policy were a valid contract in its inception and it was sought to defeat recovery thereon by reason of fraud arising thereafter, evidence that Leo Anderman had had a number of fires under suspicious circumstances or had conducted himself fraudulently as to them, would not be admissible against his daughters to show fraud in them unless the proof connected them in some way with the fraud. But that is not the case here. The father, Leo Anderman, was plaintiffs' agent to procure the policy and the fraud perpetrated was in the procurement thereof. The evidence objected to was clearly admissible on the question of that fraud.

The jury found against plaintiffs upon that issue. The record is without substantial error and the evidence is abundant to sustain the verdict. It must, therefore, be respected and permitted to stand. The judgment is affirmed. All concur.